**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHLEEN P. DORAN, | No. 2:15-CV-0777-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 21) and defendant's cross-motion for summary judgment (Doc. 27).

///

///

///

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on September 15, 2011. In the application, plaintiff claims that disability began on July 1, 2011. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 10, 2013, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a June 25, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): status post left shoulder and right knee surgery; joint pain; chronic low back and right knee pain; panic disorder without agoraphobia; and depressive disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can perform light work; she can occasionally push/pull with the left upper extremity; occasionally reach overhead with the bilateral upper extremities; frequently do other reaching with the left upper extremity; she is limited to simple unskilled work; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 5, 2015, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ's residual functional capacity assessment is not based on an appropriate analysis of the medical opinions; and (2) the ALJ failed to provide legally sufficient reasons for rejecting her statements as not credible.

### A.  **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

3

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues that, in determining her physical residual functional capacity, the ALJ improperly rejected the opinions of treating physicians Drs. Hu and Portwood. She also argues that the ALJ improperly rejected the opinion of consultative examining physician Dr. Stiles in determining her mental residual functional capacity.

///

///

1.   Physical Impairments (Drs. Hu and Portwood)

As to Drs. Hu and Portwood, the ALJ stated:

Chart notes indicated July 7, 2011, September 29, 2011, January 17, 2012, and March 8, 2012, Dr. Peggy Portwood indicated she could lift 30-40 pounds occasionally, change positions as needed, avoid twisting with the right knee, and no overhead reaching/lifting. March 22, 2012, she was administered a right knee pain injection. July 17, 2012, she was making slow recovery from left shoulder surgery and would continue with physical therapy. July 30, 2012, she was described as quite fit. August 14, 2012, she continued to make good recovery from left shoulder surgery, reported that overall her left shoulder continued to feel significantly improved, and set up for disability for a total of six months from her surgery. November 8, 2012, she was doing well with no complaints and November 13, 2012, she reported that overall her left shoulder felt significantly improved compared to prior to surgery, but still had some discomfort when lifting overhead. November 28, 2012, she was ambulating with a cane following right knee surgery but was full weight bearing. January 3, 2013, she had a cortisone injection of the right knee. March 1, 2013, a review of lumbar x-rays and CT study showed a small L4-5 disc herniation with possible mild stenosis, no significant central stenosis, and some mild multilevel facet arthropathy.

Dr. Samuel Hu, orthopedic surgeon, indicated November 13, 2012, that the claimant concerning her left shoulder could not do the full range of sedentary work and specifically could not do any overhead reaching or lifting more than 10 pounds and infrequently perform either manipulative activities. He based his opinion on painful left shoulder ROM. March 22, 2013, he indicated the claimant was limited to less than a full range of sedentary work due to her right knee and left shoulder impairments. He based his opinions on objective findings of right knee pain/swelling and decreased left shoulder ROM/pain and positive neurological findings but did not identify the findings (Exhibits 2F, 5F, 7F-8F, and 13F-16F).

The medical opinions of Dr. Hu and Dr. Portwood are given minimal weight because they are inconsistent with the SA and CE medical opinions, and because Dr. Hu indicated in his chart notes that he was only giving her six months of disability due to her left shoulder pain from her surgery. Moreover, in Dr. Hu's November 2012 assessment the only objecting finding for his opinion was pain with ROM of the left shoulder and in March 2013 only right knee pain/swelling, decreased left shoulder ROM/pain, and positive neurological findings, but he did not identify the neurological deficits. The claimant's daily activities as set forth in the record and at the hearing further support the minimal weight as well as the lack of additional surgery on her right knee or left shoulder or any surgery on her spine. Dr. Schwartz's examination showed she had no sensation deficits to pinprick involving the upper and lower extremities, fingers, and toes, 5/5 grip strength bilaterally, and 5/5 strength of the upper and lower extremities. Lastly, she testified at the hearing that her left shoulder following surgery was 75% better and her daily activities indicate that she

has good use of her upper extremities.

      a.    <u>Dr. Hu</u>

First, plaintiff argues that the ALJ erred by accepting the opinion of a consultative examining source – Dr. Schwartz – over the opinion of a treating source. This, of course, is not error in and of itself because, as discussed above, the ALJ may reject a treating source opinion for clear and convincing reasons if uncontradicted and for specific and legitimate reasons if contradicted. Here, Dr. Hu's opinion was contradicted. Therefore, the ALJ properly rejected Dr. Hu's opinion if specific and legitimate reasons were cited.

Plaintiff also argues that the ALJ erred by noting minimal objective findings. Citing <u>Garrison v. Colvin</u>, 759 F.3d 995 (9th Cir. 2014), plaintiff contends:

> In so finding, the ALJ only addressed the objective findings cited by Dr. Hu in the Questionnaires he completed (Tr. 30, 742, 755). This is contrary to a Ninth Circuit holding that, because a treating physician's check-the-box opinion was supported by his treatment records and by his "significant experience" with claimant, it was entitled to more weight than an otherwise unsupported and unexplained check-the-box form would merit. <u>Garrison</u>, 759 F.3d at 1013.
> In this case, Dr. Hu's opinions are more than check-the-box forms, which are supported by his significant experience with Plaintiff and her medical records. The record reveals Dr. Hu had treated Plaintiff's knee pain in 2009 and started treating her shoulder injury in February 2012; he practiced at the same medical group as Dr. James, who performed Plaintiff's knee surgery (Tr. 375, 416, 687). Plaintiff's treatment records document results of her x-rays and MRI reports, abnormal examination findings, left shoulder and right knee surgeries, and her post-operative progress. After her April 2012 shoulder surgery, her recovery was slow and, in November 2012, range of motion in her left shoulder was still reduced and painful (Tr. 382, 742). In August 2012, an MRI of Plaintiff's right knee revealed edema, a severe loss of cartilage under the kneecap, petallar tendon degeneration and a suspected tumor (Tr. 366-67). After her knee surgery in November 2012, Plaintiff ambulated with a cane and was fitted with a knee brace for full weight-bearing activities and, in February 2013, there was still ligamentous instability, edema and effusion in her right knee (Tr. 692, 704). Dr. Hu's March 2013 opinion considered the continuing abnormal examination in Plaintiff's left shoulder and right knee (Tr. 655). When considering both Plaintiff's knee impairment and her shoulder impairment, Dr. Hu opined Plaintiff could not perform full-time work even at the sedentary exertional level (Tr. 655).
> The ALJ's failure to consider Dr. Hu's significant experience with Plaintiff and the evidence in her treatment records is reversible legal error.

1    Plaintiff's argument is persuasive. Here, the ALJ discounted Dr. Hu's opinion as
2  minimally supported. According to the ALJ: "the only objecting finding for his opinion was
3  pain with ROM of the left shoulder and in March 2013 only right knee pain/swelling, decreased
4  left shoulder ROM/pain, and positive neurological findings. . . ." The court finds that decreased
5  range of motion, swelling, and positive neurological findings constitute objective evidence more
6  than minimally supporting Dr. Hu's opinions.

        b.     Dr. Portwood

Plaintiff argues:

> Dr. Portwood opined several times that Plaintiff should "[c]hange positions as needed" (Tr. 470-75). This is called a sit-stand option, which prevents an individual from performing the prolonged sitting contemplated by the definition of sedentary work or the prolonged standing and walking contemplated by most light work. SSR 83-12.
> The only reason the ALJ gave for rejecting Dr. Portwood's opinion was its inconsistency with the opinions of the state agency and the consultative examiner which, as discussed above, is a legally insufficient reason for rejecting the opinion of a treating physician.

While, for the reasons discussed above, the court does not agree with this argument, the ALJ's error with respect to Dr. Hu infects the ALJ's analysis of Dr. Portwood's opinion. Specifically, had the ALJ credited Dr. Hu's opinions, Dr. Portwood's consistent opinions would have likewise possibly been entitled to more weight.

        2.     Mental Impairments (Dr. Stiles)

As to Dr. Stiles, the ALJ stated:

> Dr. Ona Stiles (Ph.D.) conducted a comprehensive mental CE December 13, 2011, for complaints of anxiety and depression. The doctor indicated the claimant was independent in activities of daily living and did not need help with preparing meals. She reported that she spent the day working or cleaning the house, watching TV, reading, or visiting her sister. The mental status examination (MSE) was normal, except for a dysthymic mood and affect. Diagnostic impressions were depressive disorder and panic disorder, without agoraphobia. The functional assessment indicated she was able or had a fair/good ability to perform mental work activities but her anxiety may affect her ability to perform those activities. The doctor indicated that it appeared her mental health symptoms were chronic in nature and may not abate on their own within a one-year period. He indicated she may benefit from returning to therapy and continuing

7

> psychiatric medication and had a fair prognosis overall (Exhibit 3F). The undersigned in reviewing treating records did not find she had returned to therapy or was referred for therapy by her treating sources.
>
> * * *
>
> . . . [D]uring the MSE with Dr. Stiles, she was found alert and fully oriented. . . .
>
> * * *
>
> During the mental CE, Dr. Stiles noted that her gross motor functioning was normal, she was able to ambulate without assistance, wore make up and had good grooming, both of which indicated she had the ability to use her upper extremities, and during the MSE no abnormalities of motor activity were observed (Exhibit 3F).

The ALJ then referenced Dr. Stiles' findings favorably as follows:

> The SA mental determinations were given minimal weight as the mental CE by Dr. Stiles established she does have severe mental impairments. . . .

The ALJ also noted that Dr. Stiles' opinion supported a finding that plaintiff has moderate limitation in concentration, persistence, and pace. As to all of the consultative examining doctors' opinions – including Dr. Stiles' opinion – the ALJ stated:

> The CE medical opinions were given significant weight as they were well supported by the results of their examinations, the claimant's daily activities, and the clinical and diagnostic findings contained in treating records.

According to plaintiff: "The ALJ accepted none of the limitations caused by Plaintiff's anxiety, but gave no reasons for rejecting this part of Dr. Stiles's opinion (Tr. 335-36)." Plaintiff adds:

> Dr. Stiles rated Plaintiff's abilities as only "fair" in several functional areas (Tr. 335-36). Apparently, the ALJ interpreted "fair" as meaning not limited, because his residual functional capacity does not account for Plaintiff's "fair" ability to attend and handle work-related stress. Although Dr. Stiles did not define "fair," she indicated Plaintiff's "fair" abilities limited her ability to work, i.e., mental health symptoms may impact attendance and anxiety symptoms may impact her ability to handle work-related stress (Tr. 336). In contrast, Dr. Stiles opined Plaintiff had no intellectual impairments and assessed no limitations in

8

>that area; and found Plaintiff had only a "mild" social impairment, so opined Plaintiff's ability to accept instructions from supervisors and interact with co-workers and the public as "fair to good."
>
>Therefore, when considered in context of Dr. Stiles' entire opinion, her "fair" estimations meant Plaintiff was limited in her ability to perform sustained work in a competitive work environment. . . . Specifically, the ALJ should have carefully considered Plaintiff's limited ability to deal with work-related stress. . . . Thus, the ALJ erred by failing [to] include these limitations in his residual functional capacity finding.

The court agrees with plaintiff that Dr. Stiles opined that plaintiff "was limited in her ability to perform sustained work in a competitive work environment." Indeed, the ALJ accepted Dr. Stiles' opinions in finding that plaintiff has a severe mental impairment. The issue, however, is the extent to which such impairment affects plaintiff's ability to work. In this regard, Dr. Stiles opined that plaintiff's abilities were "fair" or better. Specifically, Dr. Stiles never opined that plaintiff had significant or marked limitations in any area of functioning. The court does not accept plaintiff's suggestion that a person with "fair" abilities is unable to work and finds no error with respect to the ALJ's consideration of Dr. Stiles' opinions.

### **Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Regarding plaintiff's credibility, the ALJ first summarized the objective findings and medical opinions, then stated:

> The undersigned now considers the claimant's subjective complaints as required by the Regulations and Social Security Ruling 96-7p, noting she alleges low back pain/injuries, left arm and shoulder pain, right knee pain, left wrist pain, joint pain, seizures, neuropathy of the upper extremities and feet, and depression.
>
> The claimant testified that she was a caregiver for her sister, beginning in 2003 and ending in April 2012, working six hours a day, but indicated the had trouble lifting her sister who was paralyzed. She testified she was not currently engaged in caregiving, and that she could not presently do the job because of back and shoulder pain. The caregiving work included

cooking, cleaning, driving her sister to doctor appointments and for errands, taking her to church, changing sheets, doing the laundry, grocery shopping, vacuuming, mopping, watering plants, raking leaves, digging holes in the garden, and cleaning the bathroom. She stopped working because of major problems with her shoulder, and her physician recommended surgery. She testified that her daily activities included changing sheets, doing the laundry, vacuuming, mopping the floor, preparing meals using a microwave, shopping bimonthly, watching movies, painting as a hobby, going to lunch and dinner with her friends and her sisters, and walking twice a week for about 10 minutes. She takes a break every 10-15 minutes when doing household chores. She testified to taking five Percocet pain pills a day. She alleged having difficulty focusing when watching TV, her feet start to fall asleep after 30 minutes of sitting and has chronic back pain for which she has tried injections that helped mildly for two weeks. She alleged laying down four to five times a day, elevating her legs daily for 20 minutes, five to six times a day, and could not do a job grabbing due to neuropathy and trouble reaching forward. She indicated she had shoulder surgery in April 2012 and was 75% better, but her shoulder still bothers her. She further alleged ringing in her ears, about four times a week that last five to ten minutes, trouble with her neck, chronic pain, mild headaches three times a day, daily, that last for one hour. She alleged having chronic right knee pain and that bending, stooping, and prolonged activities make the pain worse but it helps to elevate and ice her legs four times a day for 15-20 minutes. She then alleged that her feet hurt when wearing shoes or standing too long, could stand 15-20 minutes and walk 10 minutes. She then alleged urinary frequency, urinating 10 times a day for three to five minutes and stomach pain daily. She is on medication for depression and anxiety and a prescription for medical marijuana that helps with her stomach and insomnia. Lastly, she alleged being very fatigued and being unable to sleep.

The record documents her daily activities including driving, doing housework, vacuuming, dusting, doing the laundry, sweeping, watching TV, caring for her pets, preparing easy meals, mopping, paying bills, painting, socializing (dinner, talking, and watching movies), caring for her personal needs, and shopping (Exhibits 5E & 11E-13E). The claimant indicated in her Function Report she did not have problems getting along with family, friends, neighbors, or others. She could follow spoken and written instructions fine and was good at handling changes in a routine. She got along very well with authority figures (Exhibit 12E, pgs. 6-7). A 3rd Party Function Report indicated the claimant did not have problems getting along with family, friends, neighbors, or others, got along well with authority figures, could follow spoken and written instructions very well, and could handle changes in a routine fairly well (Exhibit 13E, pgs. 6-7).

First, her seizure complaint is not credible as the record contains scant evidence of treatment and no specific treatment by a neurologist and no evidence of any EEG testing to confirm a diagnosis of seizures. Treating records did not contain evidence that when seen she experienced a seizure

or reported that she had a seizure and sought help at an emergency room. Those records did not document upon examination abnormalities due to a seizure such as bruises, head trauma, fractures, or cuts (Exhibits 1F-2F, 7F-9F, & 13F-16F). The SA determination identified no limitation(s) due to this complaint (Exhibits 1A, 3A & 11F) and she did not allege seizures as a complaint when evaluated by Dr. Schwartz (Exhibit 4F). Lastly, the record contained no evidence of any hospitalizations due to her alleged seizures, and she identified no seizure medication(s) when she completed a Claimant's Medications form (Exhibit 16E). Therefore, this complaint does not erode her residual functional capacity.

Next, her mental complaints were not found completely credible as the SA mental determinations did not indicate she was mentally unable to work (Exhibits 1A, 3A & 11F). The psychological CE medical opinions establish she can at least perform simple unskilled work as his opinions did not indicate her ability to perform the basic mental demands for unskilled work. . . have been substantially eroded. Moreover, it indicated that she was independent in daily activities (Exhibit 3F).

No mental problems were alleged or noted/observed during the CE with Dr. Schwartz (Exhibit 4F) and the record contains no evidence she was seen/treated by mental health specialists, sought help at county mental health, had a 5150 mental health admission, or had been psychiatrically hospitalized. There was no evidence or testimony she sought help from United Way organizations or had any crisis center contacts. She has not undergone any individual or group therapy nor sought emergency room help for her alleged mental complaints.

Treating records did not refer her to a mental health specialist for her complaints of depression, anxiety, or panic, but did prescribe psychiatric medications. She did not express any suicidal ideation when seen and psychiatric examinations did not contain findings to establish that she was unable to perform at least unskilled work. Furthermore, those records did not indicate she required to be psychiatrically hospitalized or needed therapy and Dr. Hu in his functional assessments identified no functional mental limitations (Exhibits 1F-2F, 5F, 7F-9F, & 13F-16F).

The claimant indicated in her Function Report she did not have problems getting along with family, friends, neighbors, or others, could follow spoken and written instructions fine, was good at handling changes in a routine, and got along very well with authority figures (Exhibit 12F, pgs. 6-7). A 3rd Party Function Report indicated the claimant did not have problems getting along with family, friends, neighbors, or others, got along well with authority figures, could follow spoken and written instructions very well, and could handle changes in a routine fairly well (Exhibit 13F, pgs. 6-7).

Lastly, no mental difficulties were perceived when she filed her applications (Exhibit 1E, p. 2). . . .

///

Concerning her allegations of being very fatigued, having urinary frequency, ringing in her hears, and insomnia/being unable to sleep, the undersigned determined these complaints were not credible and did not erode her residual functional capacity as there is limited to no evidence of treatment and examinations did not document that she had problems hearing or appeared sleepy, drowsy, or fatigued and treating records did not chart note annotations that she had urinary frequency (Exhibits 1F-2F, 7F-9F, & 13F-16F). The internal medicine CE contained no clinical finding or observations to support these complaints (Exhibit 4F), and the SA determination identified no limitations due to these complaints (Exhibits 1A & 3A). Lastly, during the MSE with Dr. Stiles, she was found alert and fully oriented and no problem hearing was alleges or noted or that she had urinary frequency (Exhibit 3F).

Lastly, her pain complaints could not be found as credible as alleged by the claimant because the SA determinations ultimately found that she was capable of performing a modified range of light work (Exhibits 1A & 3A) as did Dr. Schwartz. Additionally, his examination showed she had no sensation deficits to pinprick involving the upper and lower extremities, fingers, and toes, 5/5 grip strength bilaterally and 5/5 strength of the upper and lower extremities (Exhibit 4F).

Despite her pain complaints, she is able to perform multiple normal daily activities as set forth in the record (Exhibits 5E, 11E, 13E-14E & 4F), Dr. Stiles in the mental CE indicated she was independent in activities of daily living (Exhibit 3F), and she testified that following surgery her left shoulder was 75% better.

During the mental CE, Dr. Stiles noted that her gross motor functioning was normal, was able to ambulate without assistance, wore make up and had good grooming, both of which indicated she had the ability to use her upper extremities and during the MSE no abnormalities of motor activity were observed (Exhibit 3F).

Treating record also did not fully support her pain and neuropathy complaints as physical and neurological examinations did not consistently find abnormalities to support them to the extent alleged during the hearing or in the record, and examinations did not show that she had decreased grip strength, atrophy, or muscle wasting of the upper or lower extremities. There was no recent EMG/NCS testing of her upper or lower extremities and no physical therapy for her back pain was prescribed.

Examinations revealed lumbar tenderness, some decreased left shoulder ROM following surgery and examinations of the right knee post-operatively showed only medial joint line tenderness, pes anserine burse, some mild tenderness over the posterior lateral joint line, knee stable to valgus and varus stress, stable posterior drawer, negative McMurray's, and distally neurovascularly intact. Moreover, examinations did not reveal neurological deficits that supported her neuropathy complaints as alleged.

///

The chart notes also did not indicate she was having adverse side effects to her medications that would erode her ability to perform physical work activities, and Dr. Hu in his functional assessments did not indicate that the limitations he identified were due also to side effects from her medications.  Furthermore, those chart notes did not indicate that she was advised to elevate her feet daily and specific chart notes indicated July 30, 2012, she was described as quite fit.  August 14, 2012, she continued to make good recovery from left shoulder surgery, reported that overall her left shoulder continued to feel significantly improved, and was set up for disability for a total of six months from her surgery.  November 8, 2012, she was doing well with no complaints and November 13, 2012, she reported that overall her left shoulder felt significantly improved compared to prior to surgery, but still had some discomfort when lifting overhead.  November 28, 2012, she was ambulating with a cane following right knee surgery but was full weight bearing.  March 1, 2013, a review of lumbar x-rays and CT study showed only a small L4-5 disc herniation with possible mild stenosis, no significant central stenosis, and some mild multilevel facet arthropathy (Exhibits 1F-2F, 5F, 7F-9F, & 13F-16F).

The record contained minimal evidence of treatment for her alleged headaches, no diagnostic studies of the brain/skull, and no evidence she was treated by a specialist or in a pain clinic for her headaches.  She was able to perform some work following her alleged onset until April 2012, and her testimony concerning that work indicated she was performing at least light type activities and had good use of her upper extremities.

Lastly, these complaints were not found very credible, as there was no evidence of chiropractor care, diagnostic testing of the cervical spine, no evidence [of] additional surgery [to] her right knee or left shoulder, and no surgery [of the] spine, and no regular/continuous treatment at a pain clinic.

Given the preceding factors, her pain related to her left shoulder, right knee, and low back was found partially credible but her other pain and neuropathy complaints were found slightly credible, with no impact on her residual functional capacity.

At the outset, the court finds no error with respect to the ALJ's analysis of the credibility of plaintiff's testimony and statements regarding limitations imposed by her mental impairment.  As discussed above, the ALJ was entitled to rely on Dr. Stiles' opinion that plaintiff's ability to perform the mental demands of work are, at worst, "fair," indicating an ability to perform work consistent with the ALJ's residual functional capacity finding.  However, just as the ALJ's error with respect to Dr. Hu infects the analysis of Dr. Portwood's opinions, the ALJ's credibility analysis as to alleged limitations associated with plaintiff's physical impairment(s) is also affected.  Specifically, had the ALJ accepted Dr. Hu's opinions, Dr.

Portwood's opinions would possibly have been entitled to more weight.  In turn, had these doctors' opinions been afforded controlling weight, the ALJ's analysis of the credibility of plaintiff's statements concerning symptoms and limitations related to physical impairments would be affected.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.  Specifically, remand shall be limited to evaluation of plaintiff's physical impairments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 21) is granted;

2. Defendant's cross motion for summary judgment (Doc. 27) is denied;

3. This matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 29, 2016

                                      /s/ Craig M. Kellison
                                   **CRAIG M. KELLISON**
                                   UNITED STATES MAGISTRATE JUDGE